51-9576-00-3
Firm I.D. No. 90181

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA WOODS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| COMMONWEALTH EDISON | ) | Case No. |
| COMPANY d/b/a ComEd, | ) | |
| | ) | JUDGE: |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff, VICTORIA WOODS, by and through her attorneys, CHRISTOPHER R. HENSON, MICHAEL J. McSHERRY and CLAUSEN MILLER P.C., complaining of COMMONWEALTH EDISON COMPANY, and in support thereof, states:

### NATURE OF THE CASE

1. Plaintiff, Victoria Woods ("Woods") seeks to redress the conduct of Defendant, Commonwealth Edison Company, d/b/a ComEd ("ComEd"), for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended, and a supplemental claim for retaliatory discharge in violation of public policy.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over the ADA claims pursuant to 42 U.S.C § 12101 *et seq.*, as amended, as well as 28 U.S.C. § 1331.

1389800v1

3. The Court has supplemental jurisdiction over the common law retaliatory discharge claim pursuant to 28 U.S.C. § 1367(a), as the facts in this claim arise from the same nucleus of operative fact as the claims under the ADA.

4. Venue is proper under 28 U.S.C. § 1391(b)(2), as all acts that give rise to this action occurred within the Northern District of Illinois.

5. Woods has fulfilled all conditions precedent prior to filing this Complaint, including the filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, receipt of a Notice of Right-to-Sue Letter from the EEOC and timely filing of this Complaint within 90 days of the receipt of the EEOC's Notice of Right to Sue. (A true and accurate copy of the EEOC's Notice of Right-to-Sue Letter is attached hereto as Exhibit "A").

## PARTIES

6. Woods is a 35 year old female, a citizen of the United States of America, and a resident of New Lenox, Illinois.

7. ComEd is an Illinois corporation licensed to conduct business in the state of Illinois.

8. At all times relevant, Woods was an "employee" within the meaning of 42 U.S.C. §12111(4) of the ADA.

9. At all times relevant, ComEd was an "employer" within the meaning of the 42 U.S.C. § 12111(5)(a) of the ADA, in that ComEd engaged in an industry affecting commerce and have had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year. ComEd is one of the largest companies in the state of Illinois, with over 3.8 million customers across Illinois.

1389800v1

## FACTUAL BACKGROUND

10. Woods began working at ComEd in 1997 as a meter reader and successfully worked her way up to a management level position. ComEd officials consistently praised Woods' work performance and issued positive performance evaluations during her 14 year tenure with ComEd.

11. Woods' last position with ComEd was a senior field supervisor at ComEd's Chicago North location ("Chicago North"). This job entailed ensuring that ComEd employees complied with various federal, state and municipal regulations, as well as overseeing the general safety of numerous ComEd field technicians.

12. In 2010, Woods began documenting safety infractions occurring in the field by technicians under her supervision at Chicago North, particularly technicians' improper utilization of proper protective equipment ("PPE"). When she reported the infractions to her superiors at ComEd, she was verbally abused by her immediate supervisor, David Lindstrom ("Lindstrom").

13. Lindstrom erupted in anger when Woods brought safety issues to the attention of ComEd management. Lindstrom, and other ComEd personnel, instructed Woods to keep the safety violations "in house" and not report them to upper management.

14. Lindstrom purposefully and intentionally intimidated Woods whenever she eschewed his admonitions and reported safety infractions to ComEd management. For example, Lindstrom used his own key to enter Woods' locked office and berate and verbally abuse her after she had reported safety issues to management, as was mandated by her job and federal and state law.

1389800v1

15. ComEd was aware of and condoned Lindstrom's retaliatory and abusive behavior. Woods repeatedly informed ComEd of the abuse she suffered from Lindstrom and others when she reported safety violations, yet ComEd did nothing to deter or remedy this egregious conduct.

16. The severe and persistent verbal abuse Lindstrom unleashed on Woods had a devastating effect on her mental health and caused her to endure severe stress, major depression, insomnia and panic attacks both on the job and at home.

17. On several occasions, Woods made reasonable requests to ComEd management to be transferred to a different ComEd branch.

18. ComEd rejected each of Woods' transfer requests, although they could have accommodated the requests.

19. On January 24, 2011, Woods temporarily left ComEd on short term disability leave to recover from the severe stress and anxiety ComEd's conduct had caused her to suffer.

20. On or about February 13, 2011, Woods was diagnosed with "major depression" by her psychiatrist, Shilpa Diwan, M.D.

21. As a result of this diagnosis, Woods was prescribed various medications and remained on short term disability leave in order to be admitted into a hospitalization program.

22. Throughout Woods' disability leave, Woods' health care providers communicated the status of her medical condition to officials at ComEd, including the Occupational Health Services Department.

23. On July 25, 2011, Dr. Diwan cleared Woods to return to work at ComEd with limited restrictions, chiefly that she not be assigned to Chicago North. ComEd purportedly approved this restriction and invited her to return to work as a field supervisor at the Oak Brook, Illinois branch.

24. After more than six months on disability leave, on July 27, 2011, Woods reported for duty at ComEd's Oak Brook, Illinois branch. Upon her arrival, without notice, ComEd terminated Woods. The explanation offered by ComEd was that it did not like the way Woods "handled matters."

## COUNT I
## Violations of the Americans With Disabilities Act 42 U.S.C § 12101 *et seq.*

25. Woods re-alleges paragraphs 1 – 24 of this Complaint as if fully set forth herein.

26. At all times relevant, Woods was a qualified individual under the ADA suffering from major depression, severe stress, insomnia and anxiety. Furthermore, these conditions were severe enough to warrant hospitalization. Woods continues to deal with these medical conditions today.

27. At all times relevant, Woods had a disability within the meaning of the ADA in that she suffered from a physical and mental impairment that substantially limited one or more of her major life activities, she had a record of such an impairment and/or she was regarded by ComEd as having such an impairment.

28. On or about July 21, 2011, Woods made a reasonable request to return to work at any ComEd location other than Chicago North.

29. At all times relevant, Woods was willing to and capable of performing the essential functions of her job at ComEd with the aforementioned reasonable accommodation.

30. On July 27, 2011, Woods reported for work at ComEd's Oak Brook branch.

31. On July 27, 2011, without warning, ComEd informed Woods that she was being terminated, instructed her to sign a release of claims, and shamefully escorted her off of company property. When asked why she was being terminated, she was told that ComEd did not like how she "handled matters."

1389800v1

32. ComEd did not reasonably accommodate Woods' condition, though it could. ComEd also refused to engage in the interactive process, as mandated by the ADA.

33. Instead, ComEd unexpectedly and unlawfully terminated Woods' employment.

34. In addition to discriminating against Woods in violation of the ADA, ComEd retaliated against Woods for having a disability and requesting a reasonable accommodation to allow her to return to work by terminating her.

35. ComEd's discriminatory conduct was intentional.

36. Through the conduct described above, ComEd discriminated and retaliated against Woods on account of her known disability and for engaging in activity protected by the ADA, in violation of the Statute.

37. As a direct and proximate result of ComEd's unlawful employment practices, Woods has lost and will continue to lose substantial income, including, but not limited to, wages and other benefits she may have been entitled to based on her seniority at ComEd.

38. As a further direct and proximate result of ComEd's unlawful employment practices, Woods has suffered the indignity of disability discrimination, which has manifested itself in the form of major clinical depression and has placed an immense strain on the relationships between Woods and her friends and family.

39. As a further direct and proximate result of ComEd's unlawful employment practices, Woods has suffered extreme mental anguish, depression, and anxiety about her future and her ability to support herself and her family, harm to her future employability and earning capacity, embarrassment amongst friends, family and co-workers, disruption to her personal life, and loss of enjoyment of life.

40. The unlawful termination has placed a black mark on Woods' record, which will make it difficult to obtain other employment.

## PRAYER FOR RELIEF

WHEREFORE, Woods respectfully prays that the Court provide the following relief:

a) Enter judgment in favor of Woods and against ComEd that its acts and practices are in violation of the laws of the ADA;

b) Award Woods such damages she is entitled to, including, but not limited to, back pay, front pay, benefits, emotional distress and punitive damages;

c) Award Woods her reasonable attorneys' fees and costs, including expert witness fees; and

d) Award Woods such other and further relief as this Court deems just and proper.

## COUNT II
### Retaliatory Discharge

41. Woods re-alleges paragraphs 1 – 24 of this Complaint as if fully set forth herein.

42. ComEd is a public utility company in the energy delivery business.

43. Maintaining a safe working environment and ensuring compliance with all applicable laws regarding safety was of paramount importance in Woods' position as a field supervisor at ComEd.

44. The maintenance and promotion of safe practices in a public utility company such as ComEd constitutes a matter of public concern and import.

45. At all times relevant, and as required by various federal and state laws, and ComEd's very own rules and regulations, Woods reported safety infractions occurring in the field by Chicago North technicians to upper management at ComEd on several occasions.

1389800v1

46. At all times relevant, Woods believed that certain infractions she observed in the field may have been in violation of and not in compliance with various federal and state laws.

47. ComEd terminated Woods in retaliation for reporting conduct to her supervisors.

48. ComEd's retaliatory termination of Woods for reporting multiple safety infractions violated a clear mandate of public policy.

49. As a direct and proximate result of ComEd's retaliatory actions, Woods has suffered extreme mental anguish, depression, and anxiety about her future and her ability to support herself and her family, harm to her future employability and earning capacity, embarrassment amongst friends, family and co-workers, disruption to her personal life, and loss of enjoyment of life.

50. ComEd's purposeful and reprehensible actions can and do entitle Woods to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court provide the following relief:

a) Enter judgment in favor of Woods and against ComEd that its acts and practices are in violation of the laws of Illinois;

b) Award Woods such damages as she is entitled to, including, but not limited to, back pay, front pay, benefits, emotional distress and punitive damages;

c) Award Woods punitive damages due to the egregiousness of ComEd's conduct; and

d) Award Woods such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

                Respectfully submitted,

                */s/ Christopher R. Henson*
                CHRISTOPHER R. HENSON
                CLAUSEN MILLER P.C.

CHRISTOPHER R. HENSON
MICHAEL J. MCSHERRY
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Plaintiff, VICTORIA WOODS

## CERTIFICATE OF SERVICE

Please take notice that upon the **22nd day of February, 2012**, we have electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, **Plaintiff's Complaint At Law**, and notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Kent Sezer
Assistant General Counsel
Exelon Corporation
10 South Dearborn, 49th Floor
Chicago, Illinois 60603-5930

Respectfully submitted,

/s/ Christopher R. Henson
CHRISTOPHER R. HENSON
CLAUSEN MILLER P.C.

CHRISTOPHER R. HENSON
MICHAEL J. MCSHERRY
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for VICTORIA WOODS